FILED

February 16, 2018

IN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 12:53 PM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT MEMPHIS

| | | |
|---|---|---|
| James McDonough, | ) | Docket No.: 2016-08-1106 |
| Employee, | ) | |
| v. | ) | |
| Phillips General and Mechanical, | ) | State File No.: 2328-2015 |
| Employer, | ) | |
| And | ) | |
| Summit Insurance Co., | ) | Judge Deana Seymour |
| Insurance Carrier. | ) | |
| | ) | |

---

## EXPEDITED HEARING ORDER

---

This case came before the Court on January 24, 2018, for an Expedited Hearing. The central legal issue is whether Mr. McDonough's work-related head injury caused the psychiatric and neurological injuries for which he seeks ongoing medical treatment.[1] For the reasons set forth below, the Court finds Mr. McDonough came forward with sufficient evidence from which this Court can conclude he is likely to prevail at a hearing on the merits. Therefore, the Court grants his requested benefits.

### History of Claim

Mr. McDonough worked as a steamfitter for Phillips General and Mechanical (PGM) when he sustained a head injury on January 8, 2015. A large pipe hit his face, causing him to fall back, lose his hardhat, and strike his head on a railroad track.[2] His next memory was waking in the emergency room.

At the ER, Mr. McDonough described a headache and neck pain. He had a mild

---

[1] The Dispute Certification Notice listed temporary disability benefits as an issue. However, the parties did not present argument or evidence related to this issue. Therefore, the Court will not address TTD.

[2] Mr. McDonough entered into evidence consistent written statements from co-workers, Timothy Meeks and Brent Needham, which described how the accident occurred.

1

abrasion to the left occipital area, contusions, and neck tenderness. CT scans showed no acute facial fractures and no intracranial findings. Mr. McDonough was discharged and told to follow-up with a neurosurgeon.

However, four days later, Mr. McDonough presented to another ER, complaining of neck pain, headaches, blurred vision, and ringing in his left ear. The provider diagnosed a head injury and a neck sprain/strain and again told him to see a neurosurgeon.

PGM accepted the claim and provided Mr. McDonough with a panel of neurologists from which he chose Dr. Feiyu Chen. Mr. McDonough complained to Dr. Chen of headaches, dizziness, blurred vision, neck pain, and insomnia. Dr. Chen diagnosed him with probable post-concussion syndrome and a probable cervical sprain. He referred Mr. McDonough to Dr. Rodney Olinger, a neurosurgeon. Dr. Olinger did not recommend surgery but referred Mr. McDonough to Dr. Autry Parker, who diagnosed him with occipital neuralgia and administered pain blocks. When the blocks failed, Dr. Parker referred Mr. McDonough back to Dr. Chen.

Dr. Chen recorded Mr. McDonough's behavioral changes and pre-existing attention deficit disorder. He believed Mr. McDonough's behavioral changes could be related to his head injury and post-concussion syndrome and referred him to a psychiatrist.[3] Mr. McDonough selected Dr. Jim Pang from a panel of psychiatrists. Dr. Chen conservatively treated Mr. McDonough and released him at neurological maximum medical improvement with no permanent impairment on February 9, 2016.

Dr. Pang referred Mr. McDonough to Dr. John Hutson for psychological testing and therapy. Rather than sending him to Dr. Hutson, PGM provided Mr. McDonough with a panel of psychologists from which he chose Dr. Connie Paul. According to Dr. Paul, Mr. McDonough's cognitive functioning fell within normal range; however, she noted a lower than expected score in memory recognition. She could not interpret some of the test results because of "an unusual response set in test taking" usually seen in individuals who "have exaggerated difficulties in a cry for help or deliberate distortion of difficulties." She stated, "[E]motional factors are contributing to his presenting complaints."

Dr. Pang continued to treat Mr. McDonough for post-traumatic stress and major depressive disorders primarily through medication management after the neuropsychological evaluation. PGM denied the psychological counseling and neurological evaluation.

---

[3] Kathy McDonough, Mr. McDonough's wife, credibly testified that he experienced behavioral changes since the accident, which included agitation, depression, and memory loss.

2

PGM sent Mr. McDonough's medical records to psychologist James Walker, Ph.D. and psychiatrist J. Sidney Alexander, M.D. for a review. Neither doctor spoke to Mr. McDonough, his treating physicians, or his family in conducting his review or drawing his conclusion. Drs. Walker and Alexander relied on medical records and surveillance of Mr. McDonough engaged in activities such as gambling at a casino and assisting his wife at a restaurant she owns. PGM introduced this surveillance into evidence at the hearing. Dr. Walker and Dr. Alexander concluded that Mr. McDonough was malingering, and they agreed his alleged accident of January 8, 2015, did not cause his complaints.

Dr. Pang considered their opinions but still related Mr. McDonough's treatment and diagnoses primarily to his work injury. He also indicated that treating and personally examining Mr. McDonough over a period of time gave him greater insight into causation than only reviewing his records.[4] On January 8, 2018, Dr. Pang placed Mr. McDonough at maximum medical improvement for his psychiatric injuries and assigned a 15% permanent impairment rating, although he still believed Mr. McDonough would benefit from psychological counseling and a neurological evaluation.

## Findings of Fact and Conclusions of Law

Mr. McDonough has the burden of proof on the essential elements of his claim. *Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). Since this is an expedited hearing, he has to come forward with sufficient evidence from which the Court can determine he is likely to prevail at a hearing on the merits. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). Specifically, he must show he suffered an "injury" as defined under the Workers' Compensation Law.

An injury "arises primarily out of and in the course and scope of employment" only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(13)(B). Medical evidence is generally required in order to establish a causal relationship, "[e]xcept in the most obvious, simple and routine cases." *Willis v. All* Staff, No. M2016-01143-SC-R3-WC, 2017 Tenn. LEXIS 455, at *13 (Workers' Comp. Panel Aug. 3, 2017). The opinion of the treating physician, selected by the employee from the employer's designated panel of physicians under § 50-6-204(a)(3), shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence. Tenn. Code Ann. § 50-6-102(14)(E).

Also, "a trial judge has the discretion to determine which testimony to accept when presented with conflicting expert opinions." *Bass v. The Home Depot U.S.A., Inc.,*

---

[4] Dr. Pang's opinions were contained in correspondence introduced into evidence at the hearing.

2017 TN Wrk. Comp. App. Bd. LEXIS 36, at *9-10 (May 26, 2017) (internal citations omitted). When medical opinions conflict, "the trial judge must obviously choose which view to believe." In doing so, the trial judge can consider "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Id.* (internal citations omitted). If one of the experts is an authorized treating physician, that expert's opinion is afforded a presumption of correctness on the issue of causation. *Id.* (internal citations omitted).

Here, the issue is whether Mr. McDonough's work injury caused the need for psychological counseling and a neurological evaluation. Mr. McDonough's authorized psychiatrist, Dr. Pang, referred him to a psychologist for testing and extensive therapy and to a neurologist for headaches. However, PGM retained a psychologist, Dr. Walker, and a psychiatrist, Dr. Alexander, to review Mr. McDonough's records to determine whether the recommended treatment was causally-related to his work injury. Both doctors concluded Mr. McDonough was malingering and that his January 8, 2015 work incident did not require ongoing psychological and neurological treatment.

In considering the conflicting expert opinions, the Court notes Dr. Pang's opinion is entitled to a rebuttable presumption of correctness as the authorized treating psychiatrist. To determine whether the opinions of Drs. Alexander and Walker rebut Dr. Pang's opinion, the Court considers the following: Dr. Walker is a psychologist and not a medical doctor; Drs. Pang and Alexander are equally qualified psychiatrists. Dr. Pang treated Mr. McDonough for an extended period, communicated with his treating physician and family, and documented his evaluation process in his office notes. "It seems reasonable that the physicians having greater contact with the Plaintiff would have the advantage and opportunity to provide a more in-depth opinion, if not a more accurate one." *Orman v. Williams Sonoma, Inc.,* 803 S.W.2d 672, 677 (Tenn. 1991). In contrast, neither Dr. Alexander nor Dr. Walker examined Mr. McDonough or communicated with his treating physician or family. Instead, each only performed a records review. Notably, Dr. Alexander did not review several records he allegedly relied upon in his report. He testified that he used Dr. Walker's report to summarize some of those records. Thus, the information available to the doctors and the importance of that information by other experts weigh in favor of Dr. Pang.

Tennessee Code Annotated section 50-6-204(a)(1)(A) (2017) states, "the employer or the employer's agent shall furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by accident as defined in this chapter." PGM initially approved treatment with Dr. Pang, who referred Mr. McDonough to a psychologist for testing and therapy and to a neurologist or "head concussion specialist" for further treatment. The records-review reports of Dr. Walker and Dr. Alexander and surveillance video of Mr. McDonough fail to rebut Dr. Pang's causation opinion, which is presumed correct.

4

Thus, Mr. McDonough has come forward with sufficient evidence from which this Court concludes he is likely to prevail regarding his need for the treatment recommended by Dr. Pang. Therefore, the Court grants his request for this treatment.

.IT IS, THEREFORE, ORDERED** as follows:

1. PGM shall approve Dr. Pang's referral for psychological therapy and pay for evaluation and/or treatment with Dr. Connie Paul as a result of the January 8, 2015 injury. PGM shall also approve Dr. Pang's referral for a neurological evaluation and/or treatment with Dr. Feiyu Chen as a result of the January 8, 2015 injury. Mr. McDonough or the providers shall submit their billing to PGM for payment under the applicable fee schedule.

2. This matter is set for a Scheduling Hearing on **April 9, 2018, at 9:00 a.m. Central Time**. The parties must call (615)532-9550 or toll-free (866)943-0014 to participate in the Scheduling Hearing. Failure to appear by telephone may result in a determination of issues without your participation.

3. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Penalty Unit by email at WCCompliance.Program@tn.gov.

**ENTERED this the ⟍⟍ day of February, 2018.**

_____
**DEANA C. SEYMOUR, JUDGE**
**Court of Workers' Compensation Claims**

5

# APPENDIX

Exhibits:
1) Medical records and reports with Table of Contents (Collective)
2) Medical Record of Edward Pratt, M.D., dated October 14, 2011
3) Medical Records of Conrad Pearson Clinic, dated April 27, 2012
4) Recorded Statement of James McDonough
5) Transcript of James McDonough's deposition
6) Transcript of James Alexander, M.D.'s deposition
7) Transcript of James Walker, Ph.D.'s deposition
8) Declaration of Phil Shulte with report and surveillance video
9) Declaration of Sherry Turner with report and surveillance video
10) Witness Statement of Timothy Meeks
11) Witness Statement of Brent Needham
12) Form C-20 Employer's First Report of Work Injury or Illness
13) Form C-41 Wage Statement

Technical Record:
1) Petition for Benefit Determination
2) Dispute Certification Notice, with attached list of Additional Issues
3) Show Cause Order
4) Request for Expedited Hearing, with Mr. McDonough's affidavit
5) Notice of Filing
6) Order of Dismissal Without Prejudice, issued March 2, 2017
7) Motion to Set Aside Order of Dismissal Without Prejudice
8) Order Setting Aside Order of Dismissal, issued March 16, 2017
9) Notice of Filing Wage Statement, with attachment
10) PGM's Position Statement for Expedited Hearing
11) Order of Continuance, issued April 21, 2017
12) Transfer Order, issued April 24, 2017
13) Status Hearing Order, issued May 23, 2017
14) Status Hearing Order, issued June 7, 2017
15) Notice of Filing Opinion Letter of Jim Pang, M.D., with attachments
16) Joint Motion to Extend Deadline for Pre-Hearing Submissions
17) Order on Joint Motion to Extend Deadline for Pre-Hearing Submissions, issued January 10, 2018
18) Position Statement of Mr. McDonough for Expedited Hearing
19) Mr. McDonough's Exhibit List
20) Mr. McDonough's Witness List
21) PGM's Supplemental Expedited Hearing Statement
22) PGM's Witness and Exhibit List

23) Mr. McDonough's Amended Exhibit List
24) Notice of Filing Medical Record of Edward Pratt, M.D., with attachments
25) Notice of Filing Medical Records of Conrad Pearson Clinic, with attachments
26) Notice of Filing Deposition Transcripts of James Walker, Ph.D. and James Alexander, M.D., with attachments
27) PGM's Motion to Deem Admitted
28) Mr. McDonough's Response to PGM's Request for Admissions

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the <u>16th</u> day of February, 2018.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Stephen Libby, Employee's Attorney | | | X | steve@lnlawmemphis.com cc: cecile@lnlawmemphis.com |
| Cate Dugan, Employer's Attorney | | | X | cate@petersonwhite.com cc: ryan@petersonwhite.com |

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

7